PER CURIAM:
 

 In July 1976, appellant Red Carpet Corporation filed a petition for Chapter XI Reorganization. In August 1976, the debtor corporation retained John Miller as its attorney. Mr. Miller represented the corporation during the confirmation of its reorganization plan and in various adversary proceedings. In April 1979, the corporation dismissed Mr. Miller. Mr. Miller then filed an application for fees and reimbursement of costs in an amount in excess of $37,000. In March 1980, the bankruptcy court held an evidentiary hearing on Mr. Miller’s fee application. In April 1980, before the bankruptcy court had ruled on the fee application, appellant filed a Motion to Surcharge Attorney for Debtor in Possession, alleging negligence, improper fee splitting, improper fee arrangements, and breach of trust by Mr. Miller and his firm. Appellant sought to have Mr. Miller held personally liable for money damages — surcharged—-in the same way that bankruptcy trustees and receivers have been in the past.
 

 On June 29, 1981, the bankruptcy court determined that it had no jurisdiction to enter a money judgment against an attorney for a debtor in possession. The bankruptcy court noted that appellant debtor had raised most of the instant affirmative allegations in its defense against appellee Miller's application for attorney’s fees. The bankruptcy court stated that, consonant with its jurisdiction, it would still consider those allegations, together with evidence presented to support them, when it considered Mr. Miller’s fees application. With regard to that application, the bankruptcy court had heard evidence on the questions of negligence, improper fee splitting, improper fee arrangements and breach of trust. On December 14, 1981, the bankruptcy court issued its order allowing Mr. Miller attorney’s fees and expenses. An appeal of that decision is now pending in the district court. (N.D.Fla., No. MCA-82-205). In this opinion, we do not consider the issues which the bankruptcy court treated in that second order, and which are not before this court.
 

 On December 16, 1981, the district court affirmed the bankruptcy court’s order in the instant case, noting that the parties agreed that the bankruptcy court retained jurisdiction to require appellee to return fees already awarded as well as to deny appellee fees on future petitions. Thus, the district court properly recognized that a bankruptcy court can deny an attorney for a debtor in possession his fees on account of his wrongdoing or negligence but cannot additionally assess against him money damages for losses due to such wrongdoing or negligence. We affirm.
 

 Let us note some of the law by which a bankruptcy court, under the old act, could deny an attorney his fees. Under the old bankruptcy rules, a bankruptcy court may deny allowance of any compensation to any attorney employed by a trustee or receiver if such an attorney holds an interest adverse to the interests of the bankruptcy estate. Rules Bankr.Proc., Rule 215(b), 11 U.S.C.A. (1977). A bankruptcy court may deny compensation to an attorney who has
 
 *1578
 
 split his fee. Rules Bankr.Proc., Rule 219(d), 11 U.S.C.A. (1977). Further, this court has declared that a determination of reasonable compensation for attorneys in bankruptcy proceedings requires attention to the standards of
 
 Johnson v. Georgia Highway Express,
 
 488 F.2d 714, 720 (5th Cir.1974).
 
 [1]
 

 Matter of First Colonial Corp. of America,
 
 544 F.2d 1291 (5th Cir.1977). In
 
 First Colonial,
 
 the court, in describing the process of fee determination, said simply, “Once the nature and extent of the services rendered have been determined, the bankruptcy judge must assess the value of those services.” 544 F.2d at 1300. Thus, under
 
 First Colonial,
 
 the judge must gauge the quality of the legal work. 544 F.2d at 1300. Poor quality which is the consequence of wrongful conduct or negligence could result in the denial of any fee a debtor’s attorney seeks.
 

 However, a bankruptcy court cannot order money damages against an attorney for a debtor in possession. A bankruptcy trustee is liable for wrongful conduct or negligence, and he may be surcharged. 12
 
 Collier on Bankruptcy
 
 ¶ 216.05 (14th ed. 1978). Similarly, a bankruptcy receiver may be held personally liable. 12
 
 Collier on Bankruptcy
 
 ¶ 201.15 (14th ed. 1978). For example, it is the duty of a bankruptcy trustee to collect the assets of the debtor, and if he fails to do so, he may be charged with the value of the assets that never came into his possession.
 
 Leonard v. Vrooman,
 
 383 F.2d 556 (9th Cir.1967). Appellant asserts that, because attorneys for the debt- or-in-possession are officers of the court and have obligations to the estate, they can be surcharged for the exact loss due to their wrongful conduct or negligence, in the same way that trustees and receivers, as officers of the court with obligations to the estate, can be surcharged. This argument represents too broad a simplification.
 

 The law regarding surcharge of bankruptcy trustees and receivers already extends well beyond the language of the bankruptcy statutes. One commentator has noted:
 

 The bankruptcy trustee and receiver are creatures of the Bankruptcy Act. Their actual nature, however, is shaped by the peculiar needs and purposes of bankruptcy, and inadequacies in the Act itself. The Act, while enumerating many of the specific duties, rights, and powers of trustees and receivers in bankruptcy, was not designed to be nor has it proven to be the final word in all questions concerning the personal liability of bankruptcy officers. Rather, courts have found it necessary to go beyond the Bankruptcy Act to general non-bankruptcy principles governing testamentary trustees, receivers in equity, executors and administrators, and other fiduciaries. From this special blend of two bodies of law has arisen a distinct bankruptcy “common law” covering the personal liability of bankruptcy trustees and receivers.
 

 Tiller,
 
 Personal Liability of Trustees and Receivers in Bankruptcy,
 
 53 Am.Bankr.L.J. 75 (1979). The rationale by which bankruptcy trustees and receivers are analogized to their common law counterparts is well set out as follows:
 

 The place of a trustee
 
 is as an important part of the machinery of administration — after adjudication.. . . Section 47 of the act (USCA, title 11, sec. 75) defines his duties in some detail but the general scope thereof is well expressed in a portion of that section as being to “collect and reduce to money the property of the estates for which they are trustees, under the direction of the court, and close up the estate as expeditiously as is compati
 
 *1579
 
 ble with the best interests of the parties in interest.” ...
 
 [A]ll of his acts relate to administering property in the custody of the court or to bringing property into such custody so that it may be there administered.
 
 This situation, as an officer of the court administering property in the custody of the court, is the woof into which all of his status, duties and powers are woven. While the act (section 70a) gives him “title” to the property and while he is vested with the rights, remedies and powers of a creditor holding a legally established lien or unsatisfied execution (section 47), yet he has such title and such rights, remedies, and powers solely to place him in position better to collect into, and to preserve, transfer, and distribute the property in the custody of the court in accordance with the requirements of the act.
 

 The status of a receiver
 
 in bankruptcy comes about and is as follows: Until there is an adjudication, it is not known whether there will be any administration under the act. Yet the bankruptcy jurisdiction begins with the filing of the petition and it is obviously necessary to secure and protect the property until the adjudication so that it can be administered if bankruptcy is adjudged. Therefore, the property is regarded as in custo-dia legis for such purposes for the filing of the petition.... To protect this custody, the act (section 2) gives bankruptcy courts jurisdiction to “appoint receivers or the marshals * * * in case the courts shall find it absolutely necessary, for the preservation of estates, to take charge of the property of bankrupts after the filing of the petition and until it is dismissed or the trustee is qualified.” Such a receiver takes no title to the property, because the title remains in the bankrupt until the adjudication ..., but he is a custodian in possession. Under another provision of section 2 he may, as here, be empowered by the court to operate the property.
 
 He is an officer of the court in charge of property in the custody of the court.
 

 Imperial Assurance Co. v. Livingston,
 
 49 F.2d 745, 748-49 (8th Cir.1931) (emphasis added; citations omitted).
 

 While an attorney for the debtor-in-possession has important obligations, he has no direct obligation in handling property of the bankruptcy estate. He is not a custodian of the estate of which the court is the ultimate custodian. As the bankruptcy court in the present case reasoned, bankruptcy courts have fashioned the remedy of surcharge against a trustee or receiver for loss due to his negligence or wrongful conduct, because a trustee or receiver is unlikely to seek a remedy against himself in any court. In contrast, a competent trustee or receiver will likely act against his negligent or mal-feasant legal advisor in a forum other than the bankruptcy court, and there seek money damages. If the attorney for the debtor in possession has acted negligently or wrongfully in the course of his representation, a bankruptcy court, under the old act, can do no more than deny him his fee.
 

 AFFIRMED.
 

 [1]
 

 . Those standards are:
 

 (1) The time and labor required; (2) The novelty and difficulty of the questions; (3) The skill requisite to perform the legal services properly; (4) The preclusion of other employment by the attorney due to acceptance of the case; (5) The customary fee; (6) Whether the fee is fixed or contingent; (7) Time limitations imposed by the client or other circumstances; (8) The amount involved and the results obtained; (9) The experience, reputation, and ability of the attorneys; (10) The “undesirability” of the case; (11) The nature and length of the professional relationship with the client; (12) Awards in similar cases.
 

 488 F.2d at 717-19.