### In the Matter of Mattie P. SWIFT, Debtor.

### Donald F. WALTON, Acting United States Trustee, Plaintiff,

v.

### Patrick WATTS and Will Richey, d/b/a Paralegal–Aid Centers of America, American Homeowners Advocates, and Legal Xpress Publishing Company, Defendants.

### Bankruptcy No. A94–73744–WHD. Adv. No. 95–6155A.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Aug. 9, 1995.

Patrick H. Watts and Will Richey, Smyrna, GA, for plaintiff.

Kent B. Alexander, U.S. Atty., James R. Schultz, Asst. U.S. Atty., Atlanta, GA, for Donald F. Walton, Acting U.S. Trustee for Region 21, Guy G. Gebhardt, Asst. U.S. Trustee for Region 21, and Jay C. Wilson, Staff Atty., U.S. Dept. of Justice, Office of U.S. Trustee.

### ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

Before this Court are several Motions to Dismiss, all of which arise from an adversary proceeding filed by Donald F. Walton, Acting United States Trustee (hereinafter "the Trustee"). Through this main action, the Trustee has sought to disgorge fees paid by Mattie P. Swift (hereinafter "the Debtor") to Patrick Watts (hereinafter "Watts") and Will Richey (hereinafter "Richey") for legal assistance regarding her impending bankruptcy filing. The Trustee also has asked this Court to enjoin any further such practice of law by Watts or Richey, neither of whom is a licensed attorney. In response to the Trustee's complaint, Watts and Richey both have filed a Motion to Dismiss that aspect of the action pending against them (hereinafter "the Watts/Richey Motions").

Additionally, defendant Watts has filed a counterclaim, seeking damages from the Debtor, the Trustee and several attorneys within the Trustee system. The Trustee and his associates have responded to the Watts action with a Motion to Dismiss Counterclaim (hereinafter "the Trustee's Motion"), arguing that sovereign and qualified immunities preclude such a counterclaim for damages by defendant Watts.

This Court has jurisdiction over both the Watts/Richey Motions and the Trustee's Motion pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). The findings of fact and conclusions of law which follow provide the basis for the Court's disposition of each Motion.

### Findings of Fact

Defendants Watts and Richey do business together under the organizational names "Paralegal–Aid Centers of America", "American Homeowners Associates" and "Legal Xpress Publishing Company". Neither of the defendants has a license to practice law in the State of Georgia. As part of their common ventures, however, Watts and Richey allegedly provide legal advice and assistance to individuals who wish to file for bankruptcy. In return, Watts and Richey are said to receive fees from the potential bankruptcy debtors with whom they have consulted. (Complaint at ¶ 40.)

According to the Trustee, Watts and Richey have had just such a fee-based counseling relationship with the Debtor, Mattie P. Swift. Specifically, the Trustee alleges that in September, 1994, Richey contacted the Debtor by telephone, stating that he could help save her home from an impending foreclosure. (Complaint at ¶ 10.) The Debtor then met with defendant Watts, who gave her several forms to fill out and assured her that he would assist her in filing for bankruptcy protection. (Complaint at ¶¶ 12–15.) On September 29, 1994, the Debtor returned the completed forms to defendant Watts and presented him with a check for $1000.00 made payable to "AHA". (Complaint at ¶¶ 15–17.)

On October 4, 1994, the Debtor filed a petition under Chapter 11 of the Bankruptcy Code. The Trustee alleges that this petition was prepared by defendant Watts pursuant to his business arrangement with the Debtor. (Complaint at ¶ 17.) According to the Trustee, defendant Watts then extracted a second $1000.00 payment from the Debtor, assuring her that he would continue to provide assis-

tance as her bankruptcy case proceeded along its course. (Complaint at ¶ 23.) The Trustee avers that shortly thereafter, Watts refused the Debtor's requests for assistance, as well as her demand for a refund of the $2000.00 which she had paid to him. (Complaint at ¶¶ 27–28.)

In light of these alleged events, the Trustee brought the instant Complaint to Recover Unauthorized Compensation and for Injunctive Relief. To the extent that Watts and Richey have provided legal services for a fee, the Trustee argues for their regulation under the same Bankruptcy Code provisions which govern the conduct of licensed attorneys. Watts and Richey both have filed a Motion to Dismiss the Trustee's complaint against them, arguing that the Trustee has failed to state a claim upon which relief may be granted and presenting several challenges to this Court's subject matter jurisdiction over the Trustee's action.

In addition to his Motion to Dismiss, defendant Watts has filed a counterclaim, seeking damages from the Debtor, the Trustee and several attorneys within the Trustee system. Watts' counterclaim draws upon a variety of legal theories, including libel/slander; negligence; misrepresentation of law; restraint of trade and price fixing; First Amendment violations; and racketeering. Each of Watts' proposed theories, however, seeks recovery for the same allegedly wrongful act—the Trustee's pursuit of a disgorgement order and an injunction upon Watts' unauthorized legal activities. The Trustee and his associates have responded with a Motion to Dismiss Counterclaim, asserting that sovereign and qualified immunities preclude such a counterclaim for damages by defendant Watts.

### Conclusions of Law

■ By design, motions to dismiss test the legal validity of a complaint. As such,

the movant bears the burden of establishing that no legally cognizable claim exists. *Mun. Util. Bd. v. Ala. Power Co.*, 934 F.2d 1493, 1500–01 (11th Cir.1991). A court hearing a motion to dismiss must accept all factual allegations found in the complaint as true and draw any inferences in favor of the non-movant.[1] In contrast to its treatment of factual allegations, however, this Court will not afford legal conclusions a presumption of accuracy and correctness. *Davidson v. State of Georgia*, 622 F.2d 895, 897 (5th Cir.1980). With these standards in mind, the Court will evaluate each of the presented motions in turn.

### I. The Watts/Richey Motions to Dismiss

#### A. Subject Matter Jurisdiction.

As primary support for their Motions to Dismiss, Watts and Richey first challenge the subject matter jurisdiction of this Court to hear the Trustee's complaint. According to Watts and Richey, the Supreme Court's holding in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), declared it unconstitutional for bankruptcy judges to hear any "contested matter". Thus, under the reasoning advanced by the Watts/Richey Motions, this Court has no jurisdiction to hear the Trustee's complaint, as it forms a "contested matter".

■ In fashioning this argument, Watts and Richey appear to misunderstand the text of the *Marathon* holding. In *Marathon*, the Supreme Court declared it unconstitutional for Congress to grant bankruptcy judges full judicial power over controversies not within "the core of the federal bankruptcy power." *Id.* at 71, 102 S.Ct. at 2871. Thus, the Supreme Court measured the constitutional limit of bankruptcy court jurisdiction in terms of bankruptcy relatedness, not degree of contest.[2]

---

1. *Id.* The Court also notes that these same fundamental burdens and presumptions apply whether the motion to dismiss involves a basic sufficiency attack under Rule 12(b)(6) or a jurisdictional challenge under Rule 12(b)(1). *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

2. In the wake of the *Marathon* holding, Congress revised its statutory grant of jurisdiction through The Bankruptcy Amendments and Federal Judgeship Act of 1984. Pub.L. No. 98–353, 98 Stat. 333 (codified as amended in various sections of 11 U.S.C. and 28 U.S.C.). As the Fifth Circuit has noted,

■ The dispute presented by the Trustee's complaint indeed constitutes a "core" bankruptcy proceeding. *See* 28 U.S.C. § 157(b)(2)(A), (O). As such, it forms a matter squarely within the confines of derivative bankruptcy jurisdiction, and a dispute upon which this Court may enter a final order of adjudication. *See* 28 U.S.C. § 157(a), (b)(1). The defendants' arguments to the contrary do not find any support in the Supreme Court's constitutional interpretations and they will not support a Motion to Dismiss.

■ As a secondary argument against subject matter jurisdiction, Watts and Richey allege that they received payment from the Debtor's husband, rather than from the Debtor. Consequently, to the extent that their fees were not satisfied from the Debtor's estate, the defendants argue that this Court has no jurisdiction over the issue at hand. Clearly, this argument will not support a motion to dismiss. As noted previously, in the context of a motion to dismiss, this Court must presume the validity of all factual allegations found in the complaint. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Here, the Trustee has alleged that the Debtor paid Watts and Richey $2000.00 for their legal counsel. (Complaint at ¶¶ 16, 23.) As such, this Court must accept the Trustee's factual allegation as true and assume that the defendants in fact did receive compensation from the Debtor's estate.

## B. Adequacy of the Trustee's Claim.

■ Watts and Richey further argue that the Trustee has "failed to state a claim upon which relief may be granted by this Court." If properly grounded, this argument would support a motion to dismiss. *See* Fed. R.Civ.P. 12(b)(6) (applicable in bankruptcy via Fed.R.Bankr.P. 7012(b)). Here, however, the complaint filed by the Trustee does state a claim subject to relief by this Court. If, as the Trustee alleges, Watts and Richey received unauthorized compensation from this Debtor for their legal services, they may be subject to this Court's order of disgorgement, injunction and sanctions. *See* 11 U.S.C. § 329; Fed.R.Bankr.P. 2017; *see also Walton v. Jones (In re Shirley),* No. 94–6219 (Bankr.N.D.Ga. Oct. 17, 1994) (non-lawyer who received unauthorized compensation for legal services subject to sanctions, permanent injunction and order of restitution).

■ In sum, the Trustee has presented this Court with a claim upon which relief may be granted. Moreover, this Court has subject matter jurisdiction over the controversy in issue. As such, the Watts/Richey Motions to Dismiss have no legal basis to support them and they, therefore, warrant denial.[3]

## II. The Trustee's Motion to Dismiss

■ Having exhausted the arguments in support of the Watts/Richey Motions to

---

Section 157 of the 1984 Act incorporates the principles suggested in the language of the *Marathon* opinions. The reference in the Act to "core" proceedings is taken directly from Justice Brennan's description of matters that involve the peculiar powers of bankruptcy courts. The Act describes non-core proceedings as "otherwise related", an apparent reference to Chief Justice Burger's description of the *Marathon* proceeding as "related only peripherally to an adjudication of bankruptcy." *In re Wood,* 825 F.2d 90, 96 (1987). Thus, in its currently amended form, Congress' scheme of bankruptcy court jurisdiction adequately accounts for the constitutional limitations enumerated by the *Marathon* Court. *See id.*

3. Once the subject matter jurisdiction and 12(b)(6) contentions have been disregarded, only two collateral arguments remain to support the Watts/Richey Motions to Dismiss. In the first of those two, the defendants argue that this Court should dismiss the Trustee's action "because it is an attempt by an acting federal official to restrict

trade, to engage in antitrust price fixing and is (sic) in violation of the RICO Act." The Court need not address its substantive doubts regarding this contention's validity or merit. As framed, the defendants' argument simply does not present cognizable justification for a motion to dismiss. *See* Fed.R.Civ.P. 12(b)(1)–(7) (applicable in bankruptcy under Fed.R.Bankr.P. 7012).

As their final argument in favor of dismissal, Watts and Richey have drawn this Court's attention to the fact that the Trustee did not pay a filing fee at the time that he brought this complaint. However, the statutory guidelines governing this matter specifically provide that "[i]f a trustee in a case under Title 11 is the plaintiff, the fee should be payable from the estate and to the extent that there is any estate realized." *See* 28 U.S.C. § 1930. As such, the Court finds it both permissible and customary for the Trustee to defer payment of any filing fee until the conclusion of the action.

Dismiss, the Court will turn its attention to defendant Watts' counterclaim and, specifically, the Trustee's Motion to dismiss that action. As noted earlier, the Trustee bases this motion upon an argument that, as a matter of law, sovereign and qualified immunities preclude any recovery by Watts on his counterclaim. As a general rule, sovereign immunity will bar suits against government employees in their official capacity.[4] Similarly, qualified immunity will insulate such an employee from individual liability, subject to certain limitations.[5]

The Court agrees with the Trustee that the Watts counterclaim implicates some aspect of the immunity doctrine. Moreover, the Court believes that the qualified and sovereign strains of the immunity doctrine lend themselves to an application in this case. However, the Court finds this matter to be more directly governed by the terms of a different branch of immunity, and accordingly it will evaluate the Trustee's motion under that more appropriate standard.

For years, the common law doctrine of judicial immunity has insulated judges from potential liability as a consequence of their judicial functions. *See Pierson v. Ray,* 386 U.S. 547, 553, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967); *D'Aguanno v. Gallagher,* 50 F.3d 877, 882 n. 9 (11th Cir.1995) (noting the ironclad nature of the doctrine); *see also Bennett v. Batchik,* No. 94–2101, 1995 WL 236679 (6th Cir. Apr. 21, 1995) (affirming dismissal of individual and official capacity suit on judicial immunity grounds); *Gantt v. Messitte,* No. 94–7385, 1995 WL 378588 (4th Cir. June 27, 1995) (both official and individual capacity claims barred by judicial immunity). This broad-based and absolute form of immunity steps in to insulate a judicial officer from liability as a result of any official act, except those acts undertaken in clear absence of jurisdiction.[6]

In a like manner, parties who are not judges, yet perform tasks essential to the court, have enjoyed a "quasi-judicial" type of immunity. *See Lonneker Farms, Inc. v. Klobucher,* 804 F.2d 1096, 1097 (9th Cir.1986)

---

4. In essence, the doctrine of sovereign immunity declares the United States immune from suit, unless it has expressly waived that immunity. *Lehman v. Nakshian,* 453 U.S. 156, 160, 101 S.Ct. 2698, 2701, 69 L.Ed.2d 548 (1981) (citations omitted). Sovereign immunity applies with equal force to suits brought against government employees in their official capacity. *Gregory v. U.S.,* 942 F.2d 1498, 1500 (10th Cir.1991). In particular, sovereign immunity will act to insulate members of the trustee system from official capacity liability. *See Howard v. Leonard,* 101 B.R. 421, 422 (D.N.J.1989).

Additionally, the Court observes that the newly enacted Federal Employees Liability Reform and Tort Compensation Act (FELRTCA) has further facilitated the extension of sovereign immunity to such official capacity employee suits. *See, e.g., Billings v. U.S.,* 57 F.3d 797 (9th Cir.1995). Specifically, FELRTCA mandates the substitution of the United States as party defendant, upon certification that the named official acted within the scope of employment. 28 U.S.C. § 2679(d)(1).

The Court, therefore, has no doubt that sovereign immunity would bar the official capacity aspect of the Watts counterclaim. Given the presence of judicial immunity in this case, however, the protection offered by sovereign immunity becomes surplusage.

5. As interpreted by the Supreme Court, qualified immunity shields government officials from civil liability as a consequence of their discretionary acts, except when they have violated a clearly

established statutory or constitutional right. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The Court notes that, although defendants can raise qualified immunity in a motion to dismiss, the presence of this "clearly established rights" standard often makes that defense a difficult foundation upon which to justify a motion to dismiss. *See Bennett v. Parker,* 898 F.2d 1530, 1535 n. 2 (11th Cir.1990) (Tjoflat, J., concurring) (citing *Quiller v. Barclays American/Credit, Inc.,* 727 F.2d 1067, 1069 (11th Cir.1984), *cert. denied,* 476 U.S. 1124, 106 S.Ct. 1992, 1993, 90 L.Ed.2d 673 (1986)); *see also Reeves v. City of Jackson,* 532 F.2d 491, 494–95 (5th Cir.1976).

6. On the defining limits of this absolute immunity doctrine, the Supreme Court has provided the following example:

> if a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a non-existent crime, he would merely be acting in excess of his jurisdiction and would be immune.

*Stump v. Sparkman,* 435 U.S. 349, 357 n. 7, 98 S.Ct. 1099, 1105 n. 7, 55 L.Ed.2d 331 (1978) (citing *Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 351, 20 L.Ed. 646 (1871)).

(citations omitted). Under this reasoning, case law has firmly established that, as an arm of the bankruptcy court, the Trustee merits such quasi-judicial immunity.[7] Accordingly, the law will absolutely immunize the Trustee for his conduct, unless he has acted in the clear absence of any authority regarding this matter.

Here, the Trustee brought a Complaint to Recover Unauthorized Compensation and for Injunctive Relief pursuant to his authority under 28 U.S.C. § 586(a). That statutory provision grants the Trustee broad supervisory powers over, inter alia, the administration of cases under Chapter 7, 11, 12 or 13 of the Bankruptcy Code. *See* 28 U.S.C. § 586(a)(3). This Court finds that the Trustee's authority under section 586(a) includes the authority to bring an action such as the present one. *See Walton v. Jones,* No. 94–6219 (Bankr.N.D.Ga. Aug. 22, 1994) (Murphy, B.J.) (discussing the Trustee's authority and standing to bring such an action). Consequently, the Trustee did not act in the clear absence of authority and, therefore, quasi-judicial immunity will preclude a suit for damages against him as a matter of law.[8] As such, Watts has failed to state a claim

upon which relief may be granted and his counterclaim warrants dismissal.[9]

### CONCLUSION

The Motions to Dismiss filed by defendants Watts and Richey lack any legal support and, therefore, are **DENIED.** The Watts counterclaim for damages against Donald F. Walton, Acting United States Trustee for Region 21; Guy G. Gebhardt, Assistant United States Trustee for Region 21; and Jay C. Wilson, staff attorney, Office of the United States Trustee, each in an individual and an official capacity, violates the doctrine of quasi-judicial immunity. Given this legal barrier to Watts' recovery against those three parties, the Motion to Dismiss Counterclaim filed by counter-defendants Walton, Gebhardt, and Wilson hereby is **GRANTED.**

**IT IS SO ORDERED.**

---

7. As a general matter, The Supreme Court has adopted a "functional approach" for determining whether absolute immunity attaches. *See Buckley v. Fitzsimmons,* — U.S. —, —, 113 S.Ct. 2606, 2613, 125 L.Ed.2d 209 (1993) (citations omitted). Specifically, this analysis turns on the extent to which the official's activities functionally intertwine themselves with those of the Court. *Id.; Bush v. Rauch,* 38 F.3d 842, 847 (6th Cir. 1994).

Here, the Trustee's conduct in bringing the present adversary proceeding is inexorably intertwined with this Court's function of conserving the Debtor's assets for distribution. *See Mullis v. U.S. Bankr. Ct.,* 828 F.2d 1385, 1390 (9th Cir. 1987); *Boullion v. McClanahan,* 639 F.2d 213, 214 (5th Cir.1981); *Damner v. Cal.,* No. 94–3098, 1995 WL 251154 at *2, 1995 U.S.Dist. LEXIS 5627 at *5 (N.D.Cal. Apr. 26, 1995); *Howard v. Leonard,* 101 B.R. 421, 422–23 (Bankr.D.N.J. 1989); *Weissman v. Hassett,* 47 B.R. 462, 466 (Bankr.S.D.N.Y.1985). As such, the Trustee's quasi-judicial conduct merits absolute immunity. Furthermore, the Court notes that the same rationale which supports the extension of judicial immunity to the Trustee also will apply to those other named defendants who are employed within the trustee system. *See Gregory,* 942 F.2d at 1500 n. 1.

8. The Court also notes the pragmatic necessity of immunizing trustees from this type of counterclaim liability. The Trustee has a legal obligation to bring actions such as the instant one, and thereby recover all that rightfully belongs to the estate. *See In re Red Carpet Corp. of Panama City Beach v. Miller,* 708 F.2d 1576, 1577–79 (11th Cir.1983); *see also Ernst & Young v. Matsumoto (In re United Ins. Man.),* 14 F.3d 1380, 1386 (9th Cir.1994) (trustee has a statutory duty to collect the assets of the debtor and may incur personal liability if he fails to do so).

9. This Court is mindful of the liberal construction normally given to the pleadings of pro se litigants, such as Mr. Watts. See *Gregory* 942 F.2d at 1499 (citations omitted). Nonetheless, a complaint will warrant dismissal whenever it is clear that the plaintiff could not recover under any conceivable version of the facts. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (citations omitted). Here, the doctrine of judicial immunity presents an absolute and insurmountable barrier to any recovery by Watts on his counterclaim against the Trustee. As such, the Court finds dismissal appropriate, notwithstanding its liberal construction of Watts' pleading.