USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 99-1170

 IN RE MAILMAN STEAM CARPET CLEANING CORP.,

 Debtor.
 ____________________

 GARY R. LEBLANC,

 Appellant,

 v.

 RICHARD P. SALEM, TRUSTEE, ETC.,

 Appellee.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Edward F. Harrington, U.S. District Judge]

 Before

 Selya, Circuit Judge,
 
 Bownes, Senior Circuit Judge,
 
 and Lipez, Circuit Judge.
 
 
 
 Gary L. LeBlanc, pro se ipso, for appellant.
 Jon C. Cowen, with whom George A. Berman and Posternak,
Blankstein & Lund, L.L.P. were on brief, for appellee.

November 2, 1999

 SELYA, Circuit Judge. Acting in his capacity as a
bankruptcy trustee, Richard P. Salem sought and received court
approval to abandon certain property of the bankruptcy estate. A
disgruntled creditor, Attorney Gary R. LeBlanc, filed an adversary
proceeding against Salem, alleging negligence and breach of
fiduciary duty. The bankruptcy court converted Salem's ensuing
motion to dismiss into a motion for summary judgment and granted it
on the ground that Salem could not be held personally liable
because he had acted pursuant to a court order. On appeal, the
district court endorsed this ruling. LeBlanc presses forward. We
reject Salem's suggestion that the lower courts lacked jurisdiction
to entertain LeBlanc's quest, but we agree that Salem's actions are
entitled to protection under the doctrine of derived judicial
immunity. Consequently, we affirm.
I. BACKGROUND
 Following conventional practice, we assay the facts in
the light most favorable to the party opposing brevis disposition
(here, LeBlanc) and draw all reasonable inferences in his favor. 
See Desmond v. Varrasso (In re Varrasso), 37 F.3d 760, 762-63 (1st
Cir. 1994) (holding that Fed. R. Bankr. P. 7056, which makes Fed.
R. Civ. P. 56 applicable to bankruptcy proceedings, requires the
application of traditional summary judgment principles in
bankruptcy proceedings). We do not give credence to empty
rhetoric, however, but credit only those assertions that are
supported by materials of evidentiary quality. See Medina-Munoz v.
R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (warning
that a party opposing summary judgment cannot rely on "conclusory
allegations, improbable inferences, and unsupported speculation"). 
Here, the record on appeal lacks crucial documents, so in many
instances we simply present the parties' contradictory positions. 
For the same reason, we use round numbers throughout, conscious
that they are approximations.
 In October 1990, Mailman Steam Carpet Cleaning Corp.
(Mailman), represented by LeBlanc, won a judgment in excess of
$450,000 against Alfred C. Lizotte and, to secure it, attached a
parcel of commercial real estate owned by Lizotte. At the time, a
corporation controlled by Lizotte (the Corporation) operated a
service station on the premises as a franchisee of Gulf Oil, Inc.
(Gulf). LeBlanc had represented Mailman on a contingent fee basis
in the original litigation, and both the judgment and the fee
remained uncollected when, on March 15, 1993, Mailman filed a
voluntary bankruptcy petition under Chapter 7, 11 U.S.C. 701-766
(1994). Salem was appointed trustee and he embarked upon the
administration of the estate. 
 On September 18, 1995, Salem filed a notice of intention
to settle the claim against Lizotte for $100,000 and sought court
approval of the plan. LeBlanc, qua creditor, filed an objection in
his own right. The court held a hearing on October 19, during
which Salem introduced an appraisal that estimated the fair market
value of the real estate, including the fixtures and equipment
associated with the Corporation's business, at $390,000. In an
apparent effort to segregate the value of the property attached,
the appraiser carved out $175,000 of this total and assigned it to
the "[l]and, buildings and installations" owned personally by
Lizotte. Even this reduced amount was not free and clear, for the
real estate was encumbered by a prior first mortgage that secured
$100,000 in debt.
 These figures proved controversial. LeBlanc maintained
that the real estate was worth much more (say, $500,000), but he
offered no concrete evidentiary support for this claim. No other
creditor objected to the proposed settlement, and the bankruptcy
court eventually approved it, subject to the following proviso:
 If the gas station is sold within two years
 from [Oct. 19, 1995], the trustee may move for
 revocation of this approval. Depending on the
 facts of the sale, the court will then either
 confirm or revoke its approval.

The court denied LeBlanc's subsequent motion to alter or amend and
ordered Salem to deliver an executed discharge of the lien, to be
held in escrow pending payment of $100,000 to the estate.
 In May 1996 (roughly seven months after the court's
conditional approval of the settlement), Lizotte and the
Corporation sold the property for some $560,000. The substance of
the transaction is in dispute, and the record on appeal is devoid
of any satisfactory evidence of its terms. We do know, however,
that $100,000 went to the bankruptcy estate to complete the
settlement and that a like amount went to the first mortgagee to
discharge the prior lien. Salem asserts that the balance
represented business assets of the Corporation and was paid out
accordingly. LeBlanc contends that this allocation was a sham and
that Lizotte fraudulently diverted $360,000 that should have been
available to his creditors (including Mailman and, derivatively,
LeBlanc himself).
 Shortly after the sale, LeBlanc moved to revoke the
approval order and to compel Salem to seek its revocation. While
these motions were pending, the bankruptcy court granted LeBlanc
permission under Fed. R. Bankr. P. 2004 to examine Lizotte, Gulf,
and the Corporation, limited, however, to information concerning
the terms of the sale and to whom the proceeds went. The court
later rebuffed LeBlanc's attempt to examine the buyer, Peterborough
Oil Co. The permitted discovery was not completed until the winter
of 1997-1998.
 In March 1998, Salem notified Mailman's creditors that he
intended to abandon the reserved right to seek revocation of the
Lizotte settlement. LeBlanc and LeBlanc alone opposed
abandonment. At a hearing held on April 15, 1998, LeBlanc again
accused Lizotte of chicanery and described the results of his
investigation. He made three main points: (1) at the Rule 2004
examination, Lizotte could recall no specific business assets that
were exchanged for the $560,000 purchase price; (2) neither the
purchase-and-sale agreement nor the recorded deed mentioned any
assets other than the improved real estate; and (3) the deed listed
the sale price of the real estate at $300,000. LeBlanc failed to
persuade, and the bankruptcy court overruled his objection and
authorized Salem to abandon the right to seek revocation.
 That same day, LeBlanc filed an adversary proceeding
against Salem, alleging negligence and breach of fiduciary duty
stemming from Salem's failure to seek revocation of the settlement. 
Salem moved to dismiss the complaint on the ground that it failed
to state an actionable claim. The bankruptcy court treated the
motion as one for summary judgment and granted it on the ground
that the complaint constituted an unfair attempt to hold Salem
personally liable for taking an action that the court had
sanctioned. The district court upheld the ruling and this appeal
followed.
II. THE JURISDICTIONAL ISSUE
 Salem questions the bankruptcy court's subject matter
jurisdiction over this adversary proceeding. Because it would be
inappropriate for this court to address the merits in the absence
of a genuine case or controversy, see Steel Co. v. Citizens For a
Better Env't, 523 U.S. 83, 93-94 (1998), we cannot ignore this
challenge.
 LeBlanc's complaint premises his right to sue on 28
U.S.C. 959(a), which provides in relevant part:
 Trustees, receivers or managers of any
 property, including debtors in possession, may
 be sued, without leave of the court appointing
 them, with respect to any of their acts or
 transactions in carrying on business connected
 with such property.

Salem correctly observes that the abandonment at issue here did not
arise in the course of "carrying on business" by the trustee and
thus suggests that LeBlanc's failure to obtain leave from the
bankruptcy court before instituting his adversary proceeding
renders that proceeding a nullity. This approach relies on two
faulty premises, namely, (1) that section 959(a) is the exclusive
source of jurisdiction for such a proceeding, and (2) that, in all
events, LeBlanc's misplaced reliance on section 959(a) forecloses
consideration of any other jurisdictional source.
 A
 The first premise rests on the view that by allowing a
certain category of suits to proceed without prior leave from the
appointing court, section 959(a) negatively implies that leave is
required in all other cases. But this view throws out the baby
with the bath water. Over a century ago, the Supreme Court as a
matter of federal common law barred suits against receivers in
courts other than the court charged with administration of the
estate, explaining that leaving litigants free to sue receivers in
other courts would effectively "take the property of the trust from
[the receiver's] hands and apply it to the payment of the
plaintiff's claim, without regard to the rights of other creditors
or the orders of the court which is administering the trust
property." Barton v. Barbour, 104 U.S. 126, 129 (1881); see also
Vass v. Conron Bros. Co., 59 F.2d 969, 970 (2d Cir. 1932) (L. Hand,
J.) (holding Barton applicable to bankruptcy trustees). Congress
responded by passing the predecessor of the present section 959(a)
to suspend the approval requirement for suits arising in the course
of carrying out business connected with trust property. Subject to
this exception, a long line of cases has required leave from the
bankruptcy court before allowing an action against the trustee to
proceed in another tribunal. See, e.g., In re Linton, 136 F.3d
544, 545 (7th Cir. 1998) (collecting cases); cf. Unsecured
Creditors Comm. of Debtor STN Enters. v. Noyes (In re STN Enters.),
779 F.2d 901, 904 (2d Cir. 1985) (requiring bankruptcy court
approval for creditors to pursue an adversary proceeding against a
third party).
 Neither these precedents nor the rationale that
undergirds them have any application to proceedings in the court
that is overseeing administration of the bankruptcy estate. 
Congress enacted section 959(a) to carve out an exception to the
Barton rule, not to expand the leave requirement to a new category
of cases. See McNulta v. Lochridge, 141 U.S. 327, 330 (1891) ("The
act does not deprive any one of the right to sue where such right
previously existed, but gives such right in certain cases . . .
."). We hold, therefore, that any negative implication which can
be extracted from the language of section 959(a) runs only to cases
brought in courts other than the bankruptcy court. Accord Estate
of Reich v. Burke (In re Reich), 54 B.R. 995, 997-98 (Bankr. E.D.
Mich. 1985) (holding that prior approval by the bankruptcy court is
not a prerequisite for filing a creditor action against the trustee
in that court).
 Of course, sidestepping this obstacle does not
necessarily leave a clear path for LeBlanc. As the proponent of
the suit, he still bears the onus of establishing subject matter
jurisdiction. See Viqueira v. First Bank, 140 F.3d 12, 16 (1st
Cir. 1998). Here, however, jurisdiction exists. Bankruptcy
trustees have the capacity to sue and be sued, see 11 U.S.C. 
323(b); federal district courts have original jurisdiction over all
civil proceedings related to bankruptcy cases, see 28 U.S.C. 
1334(b); and the Massachusetts federal district court, acting
pursuant to 28 U.S.C. 157(a), has delegated such matters to
bankruptcy courts, see D. Mass. R. 201. Because LeBlanc's claim
obviously relates to the underlying bankruptcy case he says that
Salem breached his duty under 11 U.S.C. 704 the question
becomes whether LeBlanc is a proper party to pursue the cause of
action. We think that he is.
 The Bankruptcy Code provides that "[a] party in interest,
including . . . a creditor . . ., may raise and may appear and be
heard on any issue in a case under this chapter." 11 U.S.C. 
1109(b). Chapter 7 includes no comparable provision, but in
practice bankruptcy courts routinely entertain adversary
proceedings against Chapter 7 trustees. See, e.g., Yadkin Valley
Bank & Trust Co. v. McGee, 819 F.2d 74 (4th Cir. 1987); Kowalski-
Schmidt v. Forsch (In re Giordano), 212 B.R. 617 (B.A.P. 9th Cir.
1997); United States ex rel. George Schumann Tire & Battery Co. v.
Grant (In re George Schumann Tire & Battery Co.), 145 B.R. 104
(Bankr. M.D. Fla. 1992); White County Bank v. Leavell (In re
Leavell), 141 B.R. 393 (Bankr. S.D. Ill. 1992). In light of the
structure and purposes of the Bankruptcy Code, we agree with these
courts that the right to be heard applies in the liquidation
context.
 B
 This brings us to the second premise of the
jurisdictional challenge: the idea that, since LeBlanc's complaint
incorrectly predicates jurisdiction on section 959(a), his
adversary proceeding must be dismissed. This is pettifoggery, pure
and simple, and we need not linger over it.
 Affirmative pleading of the precise statutory basis for
federal subject matter jurisdiction is not required as long as a
complaint alleges sufficient facts to establish jurisdiction. See
Brock v. Superior Care, Inc., 840 F.2d 1054, 1063-64 (2d Cir.
1988); Fristoe v. Reynolds Metals Co., 615 F.2d 1209, 1212 (9th
Cir. 1980); 2 James Wm. Moore et al., Moore's Federal Practice 
8.03[3] (3d ed. 1999). In this vein, we have recognized that
federal subject matter jurisdiction may be established by reading
a complaint holistically, "even though the jurisdiction expressly
asserted was improper." Massachusetts v. United States Veterans
Admin., 541 F.2d 119, 122 (1st Cir. 1976); cf. Viqueira, 140 F.3d
at 18-19 (considering and rejecting on the merits a possible source
of jurisdiction not explicitly referenced in the complaint). These
general principles apply in the bankruptcy context. See Fed. R.
Bankr. P. 7008 (incorporating Fed. R. Civ. P. 8).
 Here, LeBlanc's complaint identified his creditor status
and charged that Salem breached his fiduciary duty as a Chapter 7
trustee. These averments, coupled with the statutory provisions
alluded to above, satisfy us that LeBlanc's complaint, on its face,
alleged sufficient facts to support jurisdiction, notwithstanding
its mistaken reference to section 959(a). See J. Baranello & Sons
v. Baharestani (In re J. Baranello & Sons), 149 B.R. 19, 27 (Bankr.
E.D.N.Y. 1992).
III. THE MERITS
 We next consider the bankruptcy court's dismissal of the
adversary proceeding. We again divide our discussion into two
segments.
 A
 As mentioned above, the bankruptcy court converted
Salem's motion to dismiss for failure to state a claim into a
motion for summary judgment. Applicable procedural rules authorize
such a step under certain circumstances, see Fed. R. Bankr. P.
7012(b) (making applicable Fed. R. Civ. P. 12(b)), and LeBlanc does
not contest the use of the device here. We mention conversion,
however, because the bankruptcy court, by not acting on the motion
to dismiss simpliciter, impliedly held that LeBlanc's complaint 
which omitted any reference to court approval of the abandonment 
stated a valid cause of action. We examine this premise.
 The Bankruptcy Code provides that a Chapter 7 trustee
shall, inter alia, "collect and reduce to money the property of the
estate for which such trustee serves, and close such estate as
expeditiously as is compatible with the best interests of parties
in interest." 11 U.S.C. 704(1). LeBlanc's complaint alleges in
substance that Salem negligently failed to conduct an adequate
investigation and acquiesced in a settlement incompatible with the
best interests of creditors, thereby violating his fiduciary duty. 
So stated, the claim derives solely from the trustee's statutorily-
inspired duty of care. See infra note 4. Hence, its validity
depends, in the first instance, on whether an action for negligence
lies against a bankruptcy trustee in his individual capacity.
 The exact parameters of a trustee's fiduciary duties and
the potential penalties for breach thereof are not fixed by the
Bankruptcy Code, and the case law is somewhat murky at the edges. 
It is settled, however, that a bankruptcy trustee may be held
personally liable for breach of the duty of loyalty. See Mosser v.
Darrow, 341 U.S. 267, 271, 274 (1951). The Mosser Court surcharged
a bankruptcy trustee for expressly permitting two employees to
profit by selling securities to the estate, declaring in
unqualified terms that "[e]quity tolerates in bankruptcy trustees
no interest adverse to the trust." Id. at 271.
 Following Mosser, the courts of appeals have split almost
evenly on the question of whether a bankruptcy trustee can be held
personally liable for negligence (as opposed to deliberate
misconduct). Compare In re Gorski, 766 F.2d 723, 727 (2d Cir.
1985) (responding in the affirmative), Red Carpet Corp. v. Miller,
708 F.2d 1576, 1578 (11th Cir. 1983) (per curiam) (same), and Hall
v. Perry (In re Cochise College Park, Inc.), 703 F.2d 1339, 1357
(9th Cir. 1983) (same), with Yadkin Valley, 819 F.2d at 76
(responding in the negative), In re Chicago Pac. Corp., 773 F.2d
909, 915 (7th Cir. 1985) (dictum) (same), Ford Motor Credit Co. v.
Weaver, 680 F.2d 451, 461-62 (6th Cir. 1982) (same), and Sherr v.
Winkler, 552 F.2d 1367, 1375 (10th Cir. 1977) (same). We
heretofore have left the question open. See Lopez-Stubbe v.
Rodriguez-Estrada (In re San Juan Hotel Corp.), 847 F.2d 931, 937
& n.5 (1st Cir. 1988); Connecticut Gen. Life Ins. Co. v. Universal
Ins. Co., 838 F.2d 612, 621 (1st Cir. 1988).
 In our view, Mosser, properly construed, strongly
indicates that parties interested in the administration of a
bankruptcy estate can seek to surcharge the trustee for negligence. 
While Mosser itself involved "a willful and deliberate setting up
of an interest in employees adverse to that of the trust," the
Court took pains to clarify that "[t]he liability here is not
created by a failure to detect defalcations, in which case
negligence might be required to surcharge the trustee . . . ." 341
U.S. at 272. The unmistakable implication of this observation is
that, in the absence of deliberate misconduct, negligence suffices
for surcharge. Indeed, even the courts of appeals that decline to
impose personal liability for negligence draw this inference. See,
e.g., Sherr, 552 F.2d at 1375 ("A trustee in bankruptcy may be held
liable in his official capacity and thus surcharged if he fails to
exercise that degree of care required of an ordinarily prudent
person serving in such capacity, taking into consideration the
discretion allowed."). These courts, however, differentiate
between surcharges and personal liability, presumably relying on
the Mosser Court's statement that "[t]he most effective sanction
for good administration is personal liability for the consequences
of forbidden acts." 341 U.S. at 274. Because only willful
misconduct is "forbidden," the argument goes, negligence does not
trigger personal liability.
 This reasoning is tautological: whether or not negligent
conduct is "forbidden" is the question, not part of the answer. 
More importantly, the reasoning depends on a misunderstanding of
the word "surcharge," which is most fittingly defined as "[t]he
imposition of personal liability on a fiduciary for wilful or
negligent misconduct in the administration of his fiduciary
duties." Black's Law Dictionary 1441 (6th ed. 1990). Given this
definition, there is simply no principled way after Mosser to avoid
the conclusion that a bankruptcy trustee can be personally liable
for negligent breach of fiduciary duty. It follows inexorably that
LeBlanc's pleading, taken in isolation, states a cause of action
upon which relief can be granted.
 B
 Of course, we, like the lower courts, cannot take
LeBlanc's complaint in isolation. The bankruptcy court
appropriately took judicial notice of its own docket, see Fed. R.
Evid. 201 (discussed supra note 2), and ruled that its order
approving abandonment of the right to seek revocation of the
Lizotte settlement shielded the trustee from personal liability for
effecting the abandonment. The district court endorsed this
ruling. We now turn to its merits, affording de novo review. See
Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990).
 Once again, the starting point for our analysis is
Mosser. In that case, the Court outlined a mechanism through which
a bankruptcy trustee may avoid personal liability:
 The practice is well established by which
 trustees seek instructions from the court,
 given upon notice to creditors and interested
 parties, as to matters which involve difficult
 questions of judgment. . . . [If the
 challenged arrangement] was of advantage to
 the trust, this might have been fully
 disclosed to the court and the creditors cited
 to show cause why it should not have been
 openly authorized.

Mosser, 341 U.S. at 274. Following Mosser, this court has
explained that a trustee acting with the explicit approval of a
bankruptcy court is entitled to absolute immunity, as long as there
has been full and frank disclosure to creditors and the court. See
Lopez-Stubbe, 847 F.2d at 942 (citing Mosser, 341 U.S. at 274). 
This view has found near-universal favor elsewhere. See, e.g.,
Yadkin Valley, 819 F.2d at 76; Lonneker Farms, Inc. v. Klobucher,
804 F.2d 1096, 1097 (9th Cir. 1986); Boullion v. McClanahan, 639
F.2d 213, 214 (5th Cir. Unit A Mar. 1981) (per curiam). Only if a
trustee prevaricates or otherwise acts in bad faith does he doff
the cloak of derived judicial immunity. See Kowalski-Schmidt, 212
B.R. at 624.
 We believe that derived judicial immunity in this context
is essential to the orderly administration of bankruptcy
proceedings. Allowing suits against trustees for executing
explicit court orders would run an unacceptably high risk of
turning trustees into "lightning rod[s] for harassing litigation
aimed at judicial orders" and would create counterproductive
tension between bankruptcy judges and trustees. Kermit Constr.
Corp. v. Banco Credito y Ahorro Ponceno, 547 F.2d 1, 3 (1st Cir.
1976); see also Valdez v. City of Denver, 878 F.2d 1285, 1289 (10th
Cir. 1989) (warning that, without immunity, "[o]fficials employed
to implement facially valid court orders could choose: They may
disregard the judge's orders and face discharge, or worse yet
criminal contempt, or they may fulfill their duty and risk being
haled into court").
 The case at hand provides a vivid illustration. The
merits of the Lizotte settlement have been debated in the Mailman
bankruptcy case for years. Recognizing the contentiousness of the
issue, Salem wisely sought judicial approval before relinquishing
his right to move for revocation of the settlement. After a
hearing at which all interested parties (including LeBlanc) were
allowed to participate, the bankruptcy court expressly approved
Salem's recommendation. Salem is thus entitled to immunity unless
there is reason to believe that he acted in bad faith or that the
notice of disclosure he provided was deficient.
 The record reveals nothing of this sort. No one
questions Salem's good faith. As to disclosure, Salem gave all
parties in interest timely notice, and there is no basis for a
suggestion that he was anything but forthcoming in his statements
to the court and the creditors. Indeed, LeBlanc, for all his
animadversions, makes no allegations to the contrary. Rather, he
maintains that Salem ignored compelling evidence of fraud and
failed to conduct an adequate investigation.
 We do not gainsay LeBlanc's success in casting a cloud of
suspicion over the real estate transaction. But a trustee's
obligation to disclose requires only an honest and relatively
complete accounting of what he knows, not an account that is letter
perfect or born of omniscience. After all, disgruntled parties
always will be able, ex post, to dig up information that was not
available to the court. To prevent a bankruptcy case from becoming
Jarndyce and Jarndyce, see Charles Dickens, Bleak House (1853), the
trustee at some point must decide that the costs of gathering more
information outweigh the potential benefits. As long as he makes
that decision in good faith and reveals the substance of what he
knows, no more is exigible.
 In this instance, Salem reached such a conclusion and
acted upon it. In turn, the bankruptcy court was satisfied that it
had enough information before it to approve abandonment. If a
mistake has been made, LeBlanc's exclusive remedy is via direct
appeal of the court order approving the abandonment. See supra
note 1.
IV. CONCLUSION
 We need go no further. Although the bankruptcy court
properly exercised jurisdiction over this adversary proceeding and
the complaint stated a facially valid cause of action, the
trustee's derived judicial immunity warranted the entry of summary
judgment in his favor.

Affirmed.